PEARSON, J.

# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF OHIO
# EASTERN DIVISION

| | |
|---|---|
| ROBERT MAURICE JONES, | ) |
|     Plaintiff, | ) CASE NO. 4:24-CV-1908 |
| | ) |
| v. | ) JUDGE BENITA Y. PEARSON |
| | ) |
| MAHONING COUNTY CHILD SUPPORT ENFORCEMENT AGENCY, *et al.*, | ) **MEMORANDUM OF OPINION AND ORDER** |
| | ) |
|     Defendants. | ) |

Plaintiff Robert Maurice Jones filed this action, *pro se,* against the Mahoning County Child Support Enforcement Agency ("CSEA"), Cuyahoga County CSEA, Mahoning County Juvenile Court Judge Theresa Dellick, Mahoning County Juvenile Court Magistrate Judge Ted A. Ferris, Mahoning County Common Pleas Court Judge John Durkin, Trumbull County Probate Court Judge James Fredericka, Mahoning County CSEA Attorneys Joanna Malmisur and Joshua Baumann, Mahoning County Assistant Prosecutor Edward DeAngelo, Attorneys Jennifer Robbins, Ross Smith, and Thomas Mikulka, the State of Ohio, the Ohio Department of Job and Family Services, and the Ohio Bureau of Motor Vehicles. Plaintiff appears to seek relief from his multiple child support orders and the consequences he has experienced from non-payment of support. He asserts claims under 18 U.S.C. §§ 241 and 242, and 42 U.S.C. § 1983 for "void orders" and "constitutional violations." (ECF No. 1 at PageID #: 1). He seeks monetary damages.

(4:24CV1908)

Plaintiff also filed a Motion to Proceed *In Forma Pauperis* (ECF No. 2). That Motion is granted.

## I. Background

Plaintiff's Complaint is ten pages long with sixty-seven pages of exhibits, it contains no factual allegations and is nearly indecipherable. One of the exhibits to the Complaint indicates that as of 2010, Plaintiff owed over $ 12,000.00 in child support arrearages to three different women, and over $ 800.00 to the Ohio Department of Jobs and Family Services. (ECF No. 1-2 at PageID #: 18). Those child support orders appeared to have been issued in three separate cases in the Mahoning County Juvenile Court in 2004, 2005, and 2006. In 2010, a criminal action was initiated against him by the State of Ohio for non-payment of the child support. (ECF No. 1-2 at PageID #: 18). Plaintiff pled guilty to three counts of non-support of dependents. On April 5, 2013, Mahoning County Court Judge John Durkin sentenced him to five years of community controls. (ECF No. 1-2 at PageID #16-17). He completed his sentence in March 2018.

It is unclear whether Plaintiff still owes child support arrearages. He attaches a Notice to Reinstate /Reissue a License dated December 8, 2015 stating he is no longer in default. (ECF No. 1-6 at PageID #: 72). That Notice is incomplete. In 2019, his license status was listed as suspended for non-payment of child support. (ECF No. 1-6 at PageID #: 73-74). He attaches a letter from the State Department indicating he was denied a passport in 2021 because he has a child support arrearage that exceeds $ 5,000.00. He attaches a letter from Cuyahoga CSEA stating he was in arrears in his child support payments for another child who does not appear to

2

(4:24CV1908)

have been the subject of the Mahoning County Juvenile Court cases, or the Mahoning County Common Pleas Court criminal case. (ECF No. 1-6 at PageID #: 71). He also attaches a letter from the State of Ohio dated in 2022 stating that his income tax refund was being applied to his substantial child support arrearages, the letter indicates that he owed $ 15,529.00 for his three child support cases in Mahoning County, and $ 20,042.00 for his child support case in Cuyahoga County. (ECF No. 1-6 at PageID #: 79). Finally, he alleges that on July 18, 2024, Probate Court Judge Fredericka allowed his portion of the sale of his father's estate property to be applied toward his child support arrearages. (ECF No. 1 at PageID #: 4). In state court, Plaintiff challenged the Probate Court's jurisdiction to allow his portion of the estate to be garnished, but was unsuccessful.

Plaintiff now brings forth a Complaint listing six Counts. In Count One, he claims the Common Pleas Court Judge Durkin, Private Attorney Smith, and Prosecutor DeAngelo had a duty to intervene to declare his child support orders to be unconstitutional. Instead, Judge Durkin sentenced him to community control. In Count 2, he states "Lack of Jurisdiction - Not an Article II Court, violation of Separation of Power Clause Violation of the 5th and 14th Amendments, due process guaranteed." (ECF No. 1 at PageID #: 6). He states that "Defendants violated Oath of Office once they agreed and singed [*sic*] the IV-D Contract to operate in a private capacity and not officers of the court, conspiring with CSEA, and causing a conflict of interest of my due process and equal protection of the law in violation of the Fourteenth Amendment." (ECF No. 1 at PageID #: 6). In Count 3, Plaintiff asserts that Juvenile Court Judge Dellick, Magistrate Ferris, Private Attorney Robbins, and CSEA Attorney Malmisur conspired to cause him harm by

3

(4:24CV1908)

pursuing child support actions, which he contends is a violation of the separation of powers doctrine and a violation of the Fourteenth Amendment. (ECF No. 1 at PageID #: 6). Count Four contains the same arguments as Count Three but asserts those claims against Trumbull County Probate Court Judge Fredericka, Private Attorney Mikula and CSEA Attorney Baumann. Count Five asserts that the State of Ohio and its agencies and CSEA conspired to harm him by requiring him to pay child support. Count Six asserts that the Defendants violated his right to travel by suspending his driver's license and denying him a passport. Finally, although not presented in a separate Count, Plaintiff claims Defendants acted negligently. He seeks monetary damages.

## II. Standard for Dismissal

Although *pro se* pleadings are liberally construed, Boag v. MacDougall, 454 U.S. 364, 365 (1982) (per curiam); Haines v. Kerner, 404 U.S. 519, 520 (1972), a court is required to dismiss an *in forma pauperis* action under 28 U.S.C. §1915(e) if it fails to state a claim upon which relief can be granted, or if it lacks an arguable basis in law or fact. Neitzke v. Williams, 490 U.S. 319 (1989); Lawler v. Marshall, 898 F.2d 1196 (6th Cir. 1990); Sistrunk v. City of Strongsville, 99 F.3d 194, 197 (6th Cir. 1996). A claim lacks an arguable basis in law or fact when it is premised on an meritless legal theory or when the factual contentions are clearly baseless. Neitzke, 490 U.S. at 327.

A cause of action fails to state a claim upon which relief may be granted when it lacks "plausibility in the Complaint." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 564 (2007). A

4

(4:24CV1908)

pleading must contain a "short and plain statement of the claim showing that the pleader is entitled to relief." *Ashcroft v. Iqbal*, 556 U.S. 662, 677-78 (2009). The factual allegations in the pleading must be sufficient to raise the right to relief above the speculative level on the assumption that all the allegations in the complaint are true. *Bell Atl. Corp.*, 550 U.S. at 555. A plaintiff is not required to include detailed factual allegations, but must provide more than "an unadorned, the-Defendant-unlawfully-harmed-me accusation." *Iqbal*, 556 U.S. at 678. A pleading that offers legal conclusions or a simple recitation of the elements of a cause of action will not meet this pleading standard. *Id*. In reviewing a complaint, the court must construe the pleading in the light most favorable to the Plaintiff. *Bibbo v. Dean Witter Reynolds, Inc.*, 151 F.3d 559, 561 (6th Cir.1998).

### III.  Law and Analysis

To the extent Plaintiff is challenging the validity of the state court orders to pay child support, this Court lacks subject matter jurisdiction relieve him of those judgments. United States District Courts do not have jurisdiction to overturn state court decisions even if the request to reverse the state court judgment is based on an allegation that the state court's action was unconstitutional. *Exxon Mobil Corp. v. Saudi Basic Indus. Corp.*, 544 U.S. 280, 292 (2005). Federal appellate review of state court judgments can only occur in the United States Supreme Court, by appeal or by writ of certiorari. *Id*. Under this principle, generally referred to as the Rooker-Feldman Doctrine, a party losing his case in state court is barred from seeking what in substance would be appellate review of the state judgment in a United States District Court based

5

(4:24CV1908)

on the party's claim that the state judgment itself violates his or her federal rights. *Berry v. Schmitt* 688 F.3d 290, 298-99 (6th Cir. 2012).

The Rooker-Feldman doctrine is based on two United States Supreme Court decisions interpreting 28 U.S.C. § 1257(a).[1] *See District of Columbia Court of Appeals v. Feldman*, 460 U.S. 462, 103 S.Ct. 1303, 75 L.Ed.2d 206 (1983); *see also Rooker v. Fidelity Trust Co.*, 263 U.S. 413, 44 S.Ct. 149, 68 L.Ed. 362 (1923). Congress enacted the statute to prevent "end-runs around state court judgments" by requiring litigants seeking review of that judgment to file a writ of certiorari with the United States Supreme Court. *Kovacic v. Cuyahoga Cnty. Dep't of Child. & Fam. Servs.*, 606 F.3d 301 , 308 (6th Cir. 2010). The Rooker-Feldman doctrine is based on the negative inference that, if appellate court review of state judgments is vested in the United States Supreme Court, then such review may not occur in the lower federal courts. *Exxon Mobil Corp.*, 544 U.S. at 283-84; *Kovacic*, 606 F.3d 301 at 308-11; *Lawrence v. Welch*, 531 F.3d 364, 369 (6th Cir. 2008).

---

[1] 28 U.S.C. § 1257(a) provides:

> Final judgments or decrees rendered by the highest court of a State in which a decision could be had, may be reviewed by the Supreme Court by writ of certiorari where the validity of a treaty or statute of the United States is drawn in question or where the validity of a statute of any State is drawn in question on the ground of its being repugnant to the Constitution, treaties, or laws of the United States, or where any title, right, privilege, or immunity is specially set up or claimed under the Constitution or the treaties or statutes of, or any commission held or authority exercised under, the United States.

(4:24CV1908)

Rooker-Feldman is a doctrine with narrow application. It does not bar federal jurisdiction "simply because a party attempts to litigate in federal court a matter previously litigated in state court." *Exxon Mobil Corp.*, 544 U.S. at 293; *Berry*, 688 F.3d 298-99. It also does not address potential conflicts between federal and state court orders, which fall within the parameters of the doctrines of comity, abstention, and preclusion. *Berry*, 688 F.3d 299. Instead, the Rooker-Feldman doctrine applies only where a party losing his or her case in state court initiates an action in federal district court complaining of injury caused by a state court judgment itself, and seeks review and rejection of that judgment. *Berry*, 688 F.3d 298-99; *In re Cook*, 551 F.3d 542, 548 (6th Cir. 2009). To determine whether Rooker-Feldman bars a claim, the Court must look to the "source of the injury the plaintiff alleges in the federal complaint." *McCormick v. Braverman*, 451 F.3d 382, 393 (6th Cir. 2006); *see Berry*, 688 F.3d at 299; *Kovacic*, 606 F.3d at 310. If the source of the Plaintiff's injury is the state-court judgment itself, then the Rooker-Feldman doctrine bars the federal claim. *McCormick*, 451 F.3d at 393. "If there is some other source of injury, such as a third party's actions, then the plaintiff asserts an independent claim." *Id*.; *see Lawrence*, 531 F.3d at 368-69. In conducting this inquiry, the Court should also consider the Plaintiff's requested relief. *Evans v. Cordray*, No. 09–3998, 2011 WL 2149547, at *1 (6th Cir. May 27, 2011).

Here, the source of Plaintiff's alleged injury appears, in part, to be the state court child support judgments themselves. The other source of his alleged injury is the consequences that were imposed on him for violating the child support orders. To the extent that Plaintiff is asking

7

(4:24CV1908)

this Court to declare those state court orders to be void or unconstitutional, the Court cannot grant that relief.

If Plaintiff seeks to relitigate issues that were already decided in the course of the child support cases, the criminal case, or the probate case, his claims are barred by *res judicata*. The term "*res judicata*" literally means "a matter [already] judged." *Res Judicata*, BLACK'S LAW DICTIONARY (11th ed. 2019). The doctrine of *res judicata* bars duplicative litigation based on the same event or events. *Montana v. United States*, 440 U.S. 147, 153 (1979); *Parklane Hosiery Co., Inc. v. Shore*, 439 U.S. 322, 326 (1979). When one court has already resolved the merits of a case, another court will not revisit them. *Id*. The doctrine of *res judicata* therefore precludes a party from bringing a subsequent lawsuit on the same claim or from raising a new defense to defeat the prior judgment. *Gargallo v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 918 F.2d 658, 660 (6th Cir. 1990). It bars relitigation of every issue actually brought before the Court and every issue or defense that should have been raised in the previous action. *Id*.

Here, *res judicata* bars Plaintiff from relitigating in federal court claims and issues that were previously decided by a state court. *Bragg v. Flint Bd. of Educ.*, 570 F.3d 775, 776 (6th Cir. 2009). This includes relitigating issues of whether Plaintiff owes child support, whether the child support statutes are constitutional, whether he could or should have been prosecuted for nonpayment of support, and whether his inheritance could be garnished to pay for his outstanding child support obligation. Those issues necessarily were decide in the state court cases. Moreover, Plaintiff raised or had the opportunity to raise all of his federal claims in the state court actions. This Court must give full and credit to those state court judgments. Plaintiff

(4:24CV1908)

cannot relitigate those issues for a second time in federal court in the hope of obtaining a different result.

Furthermore, Plaintiff fails to state a claim upon which relief may be granted. He indicates he is seeking relief under 18 U.S.C. §§ 241 and 242, and 42 U.S.C. § 1983. Titles 18 U.S.C. §§ 241 and 242 are criminal statutes. They do not provide a private cause of action in a civil case. *Kafele v. Frank & Woolridge Co.*, 108 Fed.Appx. 307, 308 (6th Cir. 2004).

To state a claim under 42 U.S.C. § 1983, Plaintiff must demonstrate that a person acting under color of state law deprived him of rights, privileges, or immunities secured by the Constitution or laws of the United States. *Parratt v. Taylor*, 451 U.S. 527, 535 (1981). Generally to be considered to have acted "under color of state law," the Defendant must be a state or local government official or employee. Jennifer Robbins, Ross Smith, and Thomas Mikulka are private attorneys, not government employees. A privately retained attorney is not considered a state actor under 42 U.S.C. § 1983. *Washington v. Brewer*, No. 91-1935, 1991 WL 243591 (6th Cir. Nov. 21, 1991); *see also Polk County v. Dodson*, 454 U.S. 312, 321 (1981).

Moreover, while Judge Dellick, Magistrate Ferris, Judge Durkin, and Judge Fredericka are state officials for purposes of § 1983, they are absolutely immune from suits for damages that stem from decisions they made from the bench or actions they took in the course of presiding over a case in their court. *Mireles v. Waco*, 502 U.S. 9, 9 (1991); *Barnes v. Winchell*, 105 F.3d 1111, 1115 (6th Cir. 1997). Plaintiff's only allegations against these judicial officers concerns decisions they made in the course of his child support cases, the criminal case for non-payment of support and the probate action. They are immune from suit.

9

(4:24CV1908)

Similarly, Joanna Malmisur, Edward DeAngelo, and Joshua Baumann are absolutely immune from suit for their role as prosecutors representing the State in Plaintiff's child support, and criminal cases. *Imbler v. Pachtman*, 424 U.S. 409, 431 (1976); *Pusey v. Youngstown*, 11 F.3d 652, 658 (6th Cir. 1993). Absolute immunity is extended to prosecuting attorneys when the actions in question are those of an advocate. *Spurlock v. Thompson*, 330 F.3d 791, 798 (6th Cir. 2003). Immunity is granted not only for actions directly related to initiating a prosecution and presenting the State's case, but also to activities undertaken "in connection with [the] duties in functioning as a prosecutor." *Imbler*, 424 U.S. at 431; *Higgason v. Stephens*, 288 F.3d 868, 877 (6th Cir. 2002). Immunity also reaches beyond the criminal process to conduct in civil proceedings where a government attorney is operating in an enforcement role in "initiating . . . judicial proceedings," *Cooper v. Parrish*, 203 F.3d 937, 947 (6th Cir. 2000), or "undertak[ing] the defense of a civil suit," *Al-Bari v. Winn*, No. 89-5150, 1990 WL 94229, at *1 (6th Cir. July 9, 1990). The few allegations in the Complaint that are aimed at Malmisur, DeAngelo and Baumann all pertain to their role in representing the government. They are absolutely immune from suit.

Finally, the State of Ohio and its agencies, which include the Ohio Department of Jobs and Family Services and the Ohio Bureau of Motor Vehicles are also immune from suit. The Eleventh Amendment is an absolute bar to the imposition of liability upon States and their agencies. *Latham v. Office of Atty. Gen. of State of Ohio*, 395 F.3d 261, 270 (6th Cir. 2005); *Bouquett v. Clemmer*, 626 F. Supp. 46, 48 (S.D. Ohio 1985).

(4:24CV1908)

That leaves Plaintiff's claims against the Mahoning County CSEA and the Cuyahoga County CSEA. Only Count Five in the Complaint is directed specifically at these Defendants. It states that the CSEA Defendants,

> conspired to cause harm to Robert Maurice Jones through IV-D Contract, operating under color of law and fraudulent concealment. Defendants conspired to issue void orders knowingly through IV-D contract, and agreed to act on these void orders causing harm to Plaintiff, then and now still suffering from void unlawful order, violating the 5th Amendment right to due process, 14th Amendment to due process and equal protection.

ECF No. 1 at PageID #: 8. As stated above, this Court lacks subject matter jurisdiction to declare a child support order issued by a state court to be void. *Rooker*, 263 U.S. 413 (1923); *Feldman,* 460 U.S. 462 (1983). The orders are valid unless Plaintiff convinces a state court or the Supreme Court of the United States otherwise. Furthermore, due process requires that Plaintiff be given notice of the proceedings and an opportunity to be heard "in a meaningful manner." *See Loudermill v. Cleveland Bd. of Educ*., 721 F.2d 550, 563 (6th Cir. 1983). Plaintiff does not allege facts suggesting he was denied notice of any child support proceedings or that he was not given an opportunity to be heard. He fails to state a claim for denial of due process. Furthermore, equal protection requires Plaintiff to allege facts suggesting he was intentionally treated differently than others similarly situated without any rational basis for the difference. *Rondigo, L.L.C. v. Township of Richmond*, 641 F.3d 673, 681 -682 (6th Cir. 2011); *Radvansky v. City of Olmsted Falls*, 395 F.3d 291, 312 (6th Cir. 2005). Plaintiff did not allege facts suggesting he received disparate treatment.

(4:24CV1908)

Count Two is directed generally at "Defendants." The portion that could plausibly be applicable to the CSEA Defendants appears to be redundant to the claims in Count Five. It also mentions separation of powers. The separation of powers between a state trial judge and county agency is a matter of state law, not federal constitutional law. See Austin v. Jackson, 213 F.3d 298, 302 (6th Cir. 2000). It will not support a claim under 42 U.S.C. § 1983.

Finally, Plaintiff asserts a claim for violation of his Right to Travel against "Defendants" in Count Six. This is founded in part on his driver's license suspension and the State Department's denial of his passport application under 42 U.S.C. § 652(k) based on his child support arrearage in excess of $ 5,000.00.

The Supreme Court has identified the right to travel from one state to another as a fundamental right of United States citizenship. See Saenz v. Roe, 526 U.S. 489, 500-01 (1999). This right has three components: (1) the right of a citizen of one state to enter and to leave another state; (2) the right to be treated as a welcome visitor rather than an unfriendly alien when temporarily present in the second state; and (3) for those travelers who elect to become permanent residents, the right to be treated like other citizens of that state. Id. at 500. Plaintiff does not clearly explain how he believes the CSEA Defendants violated his right to travel. It appears, however, that he is confusing the constitutional right to travel with the qualified privilege to drive an automobile. George Taylor Duncan v. Linda Cone, No. 00–5705, 2000 WL 1828089, at *2 (6th Cir. Dec. 7, 2000). Plaintiff has not alleged facts suggesting he is unable to travel between states. He just cannot drive a motor vehicle to do so. He has other

(4:24CV1908)

modes of transportation at his disposal, including being a passenger in a vehicle. The suspension of his driver's license did not deny him the right to travel.

Although the freedom to travel internationally is an aspect of liberty protected by the Due Process Clause of the Fifth Amendment, it is not a fundamental right equivalent to the right to interstate travel and thus, is subject to reasonable governmental regulations within the bounds of due process. See *Haig v. Agee*, 453 U.S. 280, 307 (1981); *Califano v. Aznavorian*, 439 U.S. 170, 176-77 (1978); *Hutchins v. District of Columbia*, 188 F.3d 531, 537 (D.C.Cir.1999) (*en banc*); *Freedom to Travel Campaign v. Newcomb*, 82 F.3d 1431, 1438-39 (9th Cir.1996). Title 42 U.S.C. § 652(k) and regulations that support it do not violate the Due Process Clause as long as there is a rational basis for refusing to issue a passport and revoking a previously issued one to individuals who owe arrearage of child support in an amount exceeding $5,000. The Government has a substantial interest in promoting the payment of child support arrearage. Restricting passports for persons who owe substantial arrearage is reasonably related to furthering that end because it encourages people to pay such arrearage, and prevents them from fleeing the country to avoid payment. See *Weinstein v. Albright*, No. 00CIV.1193(JGK), 2000 WL 1154310, at *4-6 (S.D.N.Y. Aug. 14, 2000). Therefore, there is no basis for the Plaintiff's due process claim. In addition, the CSEA Defendants have no role in the denial of a passport. That is a decision that is made by the State Department based on information it receives from the Secretary of Health and Human Services.

(4:24CV1908)

## V. Conclusion

Accordingly, Plaintiff's Motion to Proceed *In Forma Pauperis* (ECF No. 2) is granted. For the reasons above, this action is dismissed pursuant to 28 U.S.C. § 1915(e). The Court certifies, pursuant to 28 U.S.C. § 1915(a)(3), that an appeal from this decision could not be taken in good faith.

      IT IS SO ORDERED.

February 6, 2025                            */s/ Benita Y. Pearson*
Date                                           Benita Y. Pearson
                                                    United States District Judge